UNITED STATES, Appellee,

v.

Leonardo A. RILEY, Dental Technician Third Class, U.S. Navy, Appellant.

No. 96–1144.
Crim.App. No. 94 1772.

U.S. Court of Appeals for the Armed Forces.

Argued June 3, 1997.

Decided Sept. 30, 1997.

Sullivan and Gierke, JJ., filed concurring opinions.

For Appellant: *Lieutenant Jennifer L. Eichenmuller*, JAGC, USNR (argued); *Lieutenant James T. Mahoney*, JAGC, USNR.

For Appellee: *Lieutenant Commander Christian L. Reismeier*, JAGC, USN (argued); *Colonel Charles Wm. Dorman*, USMC, and *Commander D.H. Meyers*, JAGC, USN (on brief); *Lieutenant David M. Harrison*, JAGC, USNR.

*Opinion of the Court*

EFFRON, Judge:

At a contested general court-martial, officer members convicted appellant of forcible sodomy of a minor and indecent assault of a

minor, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. They sentenced him to a dishonorable discharge, confinement and forfeiture of $400.00 pay per month for 2 years, and reduction to the lowest enlisted grade. The convening authority approved these results.

The Court of Criminal Appeals affirmed the sodomy conviction and the sentence.[1] Thereafter, that court denied appellant's motion for reconsideration *en banc.*

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR WHEN, CONTRARY TO MILITARY RULE OF EVIDENCE 301(f)(3), HE ADMITTED EVIDENCE THAT WHEN QUESTIONED BY INVESTIGATORS APPELLANT ELECTED TO REMAIN SILENT, THEREBY PERMITTING A VIOLATION OF APPELLANT'S RIGHT UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 31 OF THE UNIFORM CODE OF MILITARY JUSTICE.

We hold that admission of the investigator's testimony concerning appellant's invocation of his right to remain silent, in the circumstances of this case, constituted plain error

that materially prejudiced the substantial rights of appellant, and we reverse.[2]

## I. FACTS

AW, the 13-year-old prosecutrix in this case, lived with her family in San Diego for several years at the same time that appellant—a distant relative—had been stationed there. Subsequently, AW's family moved to Bremerton, Washington, where she participated in a counseling program for students who had been sexual abuse victims or who had problems adjusting to junior high school. AW informed a counselor in the program that while her family had lived in San Diego 3 years earlier, appellant had sodomized her. This statement resulted in the charge against appellant. The Government's only evidence of the sexual acts that formed the basis for the case consisted of the testimony of AW.

At trial, the prosecution's opening witness on the merits was Special Agent Keleher of the Naval Criminal Investigative Service (NIS) at Great Lakes, where appellant was stationed at the time of trial. Agent Keleher, who described himself as the "case control agent," provided little evidence on the merits of the case. He testified that he received notice of AW's allegation from the Illinois Department of Children and Family Services, which had been notified of the allegation by the Washington State Child Protective Services. Aside from describing the

---

1. 44 MJ 671 (1996). That court dismissed the indecent assault charge on the grounds of multiplicity, holding that it was a lesser included offense with respect to the sodomy charge.

2. We also granted review of the following issues:

II

WHETHER THE EVIDENCE OFFERED AT TRIAL WAS NOT LEGALLY SUFFICIENT TO PROVE APPELLANT WAS GUILTY OF SODOMY.

III

WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL DEFENSE COUNSEL FAILED TO OBJECT TO TESTIMONY THAT APPELLANT INVOKED HIS RIGHT TO REMAIN SILENT, AND FAILED TO MOVE TO STRIKE SUCH TESTIMONY, AND FAILED TO MOVE FOR A MISTRIAL OR FOR AN INSTRUCTION FOR THE MEMBERS TO DISREGARD SUCH TESTIMONY.

IV (Specified)

(1) WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS CORRECTLY ANALYZED THE RELATIONSHIPS AMONG THE RESPONSIBILITIES ESTABLISHED UNDER ARTICLE 66(c), UCMJ, THE PROVISIONS OF ARTICLE 59(a), UCMJ, THE STANDARD FOR REVIEW OF CONSTITUTIONAL ERRORS, THE DOCTRINE OF PLAIN ERROR, THE DOCTRINE OF HARMLESS ERROR, AND THE CONCEPTS OF FORFEITURE AND WAIVER; AND (2) WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS CORRECTLY APPLIED THOSE CONCEPTS IN AFFIRMING THE CONVICTION EVEN THOUGH THE COURT CONCLUDED THAT THERE WAS A "REASONABLE POSSIBILITY" THAT THE EVIDENCE COULD HAVE CONTRIBUTED TO THE CONVICTION.

Because of our disposition of the issue set out in the text, we need not reach these issues.

sparse background information that led to his involvement, his testimony consisted of the following description of his unsuccessful efforts to obtain a statement from appellant:

Q. During your investigation in this case, did you have any contact with the accused in this case?

A. Yes, ma'am, I did. On the 6th of May, 1993, I contacted Mr. Riley and brought him to the NIS office for an interrogation where he was provided with his military and constitutional rights. *At that time he elected to remain silent. which is his right.* He did grant a permissive search of his residence. We searched the residence with no evidentiary findings of anything connected with the case being found. And he stated he would contact me the following day. He did on the 7th of May, 1993, contact me, *said he'd spoken with an attorney and. based on his attorney's advice. would elect[ ] to remain silent. wouldn't participate in any further interrogation.*

Q. Did your involvement in this investigation consist of persons who would have been in the Great Lakes area who were involved in this case?

· A. Yes, ma'am.

Q. So you had no personal involvement with the persons who would have been in Washington State?

A. That's correct. The only person I interviewed personally on this case was when I contacted Mr. Riley and *he elected to remain silent.*

(Emphasis added.)

Without further direct examination or any defense objection or cross-examination, Agent Keleher was dismissed as a witness.

## II. DECISION OF THE COURT OF CRIMINAL APPEALS

The Court of Criminal Appeals concluded, in accordance with longstanding precedent of this Court, that Agent Keleher's three-time reference to appellant's assertion of his right to silence was inadmissible. *See* U.S. Const. amend. V; Art. 31, UCMJ, 10 USC § 831; Mil.R.Evid. 301(f)(3), Manual for Courts–Martial, United States (1995 ed.). The Court of Criminal Appeals noted this Court's admonition over 35 years ago in *United States v. Brooks,* 12 USCMA 423, 425–26, 31 CMR 9, 11–12 (1961):

It has long been settled that an accused's pretrial reliance upon his rights under ... Article 31, when interrogated concerning an offense of which he is suspected, may not be paraded before a court-martial in order that his guilt may be inferred from his refusal to comment on the charges against him.

■ The Court of Criminal Appeals recognized that when the prosecution brings such matter to the attention of the factfinders, the usual test for prejudice is the constitutional standard of harmless beyond a reasonable doubt. *United States v. Moore,* 1 MJ 390 (CMA 1976); *see also United States v. Ward,* 1 MJ 176 (CMA 1975) (adopting test of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). After reviewing the evidence under this standard, the court below concluded:

Considering all the evidence presented at trial, there is a reasonable possibility the erroneous introduction into evidence of the fact the appellant repeatedly exercised his right to remain silent before trial might have contributed to his conviction.... Since it is not clear beyond a reasonable doubt that, absent the error, the members would have found the appellant guilty, *the error, if properly preserved, would not have been harmless under the Constitutional standard.* Had the error been objected to at trial and the military judge failed to take adequate corrective action, the appellant would be entitled to a new trial.

44 MJ at 675 (emphasis added).

Noting, however, that a constitutional or other right may be forfeited by failure to make timely objection, the court below then analyzed the effect of the error in light of appellant's failure to object. The court noted that the doctrine of forfeiture does not apply where there is plain error. *See* Mil.R.Evid. 103(d). The court also observed that to demonstrate plain error, an appellant has the burden of showing the appellate court that

there was error, that it was obvious, and that "it affects a substantial right of the accused, *i.e.*, it was prejudicial." 44 MJ at 675 (citing *United States v. Prevatte*, 40 MJ 396, 397 (CMA 1994)).

The court recognized that the plenary review authority granted by Article 66(c), UCMJ, 10 USC § 866(c) (1994), provides the Court of Criminal Appeals with more expansive authority than other appellate courts have "to correct errors that were forfeited." Quoting from this Court's opinion in *United States v. Claxton*, 32 MJ 159, 162 (1991), the Court of Criminal Appeals said:

> No "plain error" threshold is involved. If the Court of Military Review [3] in the interest of justice, determines that a certain finding or sentence should not be approved—by reason of the receipt of improper testimony or otherwise—the court need not approve such finding or sentence.

44 MJ at 676; *see also United States v. Evans*, 28 MJ 74, 76 (CMA 1989) (the court "may properly refuse to apply the doctrine of waiver in the exercise of this statutory authority" under Article 66(c) to affirm only such findings and sentence as it "finds correct in law and fact and determines, on the basis of the entire record, should be approved").

The Court of Criminal Appeals declined to grant relief, however, on the grounds that its authority was limited by Article 59(a), UCMJ, 10 USC § 859(a), to correcting an error only if it "materially prejudices the substantial rights of the accused." The court interpreted this language in Article 59(a) as follows:

> Applying, therefore, the military harmless error standard of Article 59, UCMJ, we conclude that, although there is a reasonable *possibility* that the evidence *could have contributed* to the appellant's conviction, the appellant has not met his burden of persuading us that the error had a substantial and injurious effect or influence on the members' verdict and was therefore *actually prejudicial.*

3. The Courts of Military Review were redesignated as the Courts of Criminal Appeals in 1994.

44 MJ at 676–77 (citing *United States v. Murray*, 25 MJ 445 (CMA 1988), and civilian cases involving habeas corpus review).

### III. DISCUSSION

In the absence of a trial objection to the repeated references to appellant's pretrial invocation of his right to silence, the question before this Court is whether permitting those references to be made constituted plain error. To be plain, "the error must not only be both obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations.' " *United States v. Fisher*, 21 MJ 327, 328 (CMA 1986) (quoting *United States v. Young*, 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985)).

The error in this case meets each of the three prongs of the plain error test. The error of permitting a prosecution witness to make three distinct, inadmissible references to a right as solidly ingrained in law as an accused's pretrial right to silence, all within a brief period of testimony, is an "obvious" error. With respect to the "substantial" nature of the error, we note the critical importance of the rights guaranteed by Article 31, as we described in *Moore* as follows:

> It is the well-settled law of this Court that it is improper to bring to the attention of the triers of fact that an accused, upon being questioned on an occasion prior to trial, asserted his rights to counsel or to remain silent. . . . This principle is founded upon the open-eyed realization that to many, even to those who ought know better, the invocation by a suspect of his constitutional and statutory rights to silence and to counsel equates to a conclusion of guilt—that a truly innocent accused has nothing to hide behind assertion of these privileges.

1 MJ at 391 (footnotes and citations omitted).

As to the third prong of the test for plain error—prejudice—we conclude that the abridgment of this important right in this

*See* 41 MJ 213, 229 n. * (1994).

case "materially prejudice[d] the substantial rights of" appellant. Art. 59(a). Agent Keleher was the prosecution's opening witness. Except for his direct observation of appellant's invocation of his right to silence, he had only the most marginal hearsay knowledge of the case. His testimony, focusing on appellant's decision to remain silent, was the filter through which all the other evidence was viewed by the members, and the members received no instruction from the military judge not to do so. These circumstances posed a heightened risk that the members felt invited, consciously or subconsciously, to infer "that a truly innocent accused has nothing to hide behind assertion of these privileges." *Moore*, 1 MJ at 391.

This tainted view is especially important when considered in connection with the nature of the Government's case. As the Court of Criminal Appeals noted, the testimony of the prosecutrix was wavering; there were no other witnesses and "no physical evidence or other direct corroboration at trial that any sexual acts took place." 44 MJ at 674. In opposition to the child's testimony, appellant denied that any sexual activity had occurred and offered evidence of his good military character. With the record in this state, we conclude that the obvious and substantial error in referring to appellant's invocation of his right to silence "materially prejudice[d][his] substantial rights." Art. 59(a).[4]

## IV. CONCLUSION

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge COX and Judge CRAWFORD concur.

SULLIVAN, Judge (concurring):

I do not agree with Judge Gierke's suggestion that Article 59(a), Uniform Code of Military Justice, 10 USC § .859(a), should be construed as not requiring an analysis of prejudice based on the effect of an error in a particular case. *See United States v. Meek*, 44 MJ 1, 8 (1996); *United States v. McCoy*, 31 MJ 323, 327–28 (CMA 1990) (cases cited therein). Moreover, in view of the majority's detailed discussion of the impact of the error on appellant's trial, I do not agree that it has employed such a rule in reaching its decision in this case.

GIERKE, Judge (concurring):

I agree that this case should be reversed for plain error. I believe that the court below went astray when it construed Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a), as requiring an appellant in a plain-error case to demonstrate that the error affected the findings of guilty.

Issue I involves an error that was not challenged by timely objection at trial. Thus the inquiry on appeal involves three questions: (1) May the appellate court take notice of the error? (2) If it may take notice of the error, may the appellate court reverse the conviction? and (3) If the appellate court may reverse the conviction, must it do so?

The answer to the first question is found in the plain-error doctrine, Articles 66(c) and 67(c), Uniform Code of Military Justice, 10

4. *United States v. Murray*, 25 MJ 445, 447 (CMA 1988), does not support the conclusion of the court below that a showing of "a reasonable possibility that the evidence could have contributed to the appellant's conviction" is inadequate to meet the test of prejudice under Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a). 44 MJ at 677 (emphasis omitted). *Murray* used the phrase "actual prejudice" to emphasize that mere omission of the staff judge advocate's pretrial advice did not amount to "per se prejudice" that would require automatic reversal. The *Murray* Court emphasized the importance of considering prejudice in the context of the specific facts of the case, which is our approach to the instant case. Moreover, the lower court's analogy between the measure of prejudice under Article 59(a) and its plenary review powers under Article 66(c), UCMJ, 10 USC § 866(c) (1994), *see United States v. Claxton*, 32 MJ 159, 162 (CMA 1991), on the one hand, and the authority of federal courts to grant *habeas corpus* relief, on the other, is unsound. In the latter, great deference is given to the decision under review, and this approach through this extraordinary mechanism has no application to the standard of review and measure of prejudice on direct appeal under Article 59(a).

USC §§ 866(c) and 867(c) (1994), respectively. Mil.R.Evid. 103(a), Manual for Courts-Martial, United States (1995 ed.), provides that "[e]rror may not be predicated" on evidentiary issues unless there is a timely objection at trial, but Mil.R.Evid. 103(d) permits an appellate court to "tak[e] notice of plain errors that materially prejudice substantial rights." In *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court defined plain error as having three components: (1) an error, (2) which is plain, *i.e.*, clear or obvious; and (3) that "affect[s] substantial rights." *Id.* at 732–34, 113 S.Ct. at 1776–78.[1]

In *United States v. Claxton*, 32 MJ 159, 162 (1991), this Court held that a Court of Military Review (now the Court of Criminal Appeals)[2] enjoys broad review authority under Article 66(c), is not required to apply waiver, and thus is not constrained by the plain-error doctrine. This Court also held that "in the converse situation, where plain error is present, the Court of Military Review may not rely on waiver." On the other hand, our appellate authority under Article 67(c) "is much more limited." *Id.* In short, a Court of Criminal Appeals may take notice of errors of law, whether or not they were preserved by timely objection; our Court is constrained by the rules of waiver and the doctrine of plain error.

The second question is answered by Article 59(a) and *Olano*. Article 59(a) provides: "A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." This Article applies equally to our Court and the Courts of Criminal Appeals.

The legislative history of Article 59(a) makes clear that it was intended to preclude appellate courts from setting aside a finding of guilty for minor technical errors "of law which do not prejudice the rights of the accused." Congress recognized also that, in most cases, an error that prejudices the substantial rights of an accused would require reversal. Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 1174–75 (1949). It is important to note that Article 59(a), like the third prong of the *Olano* test for plain error, speaks of impact on a substantial right, not prejudicial impact on the findings or sentence.

The plain-error doctrine "is permissive, not mandatory." *Olano* holds that if an appellate court finds plain error, it may reverse "but is not required to do so." 507 U.S. at 735, 113 S.Ct. at 1778. However, Article 59(a) is more restrictive than *Olano*, because it requires that "the error *materially* prejudices the substantial rights of the accused." (Emphasis added.) Thus, any error that satisfies Article 59(a) will satisfy the less restrictive *Olano* test.

To answer the third question, an appellate court must determine if the error is harmless. Before applying harmless-error analysis, an appellate court must identify the nature of the error. If the error is nonconstitutional, an appellant must persuade the appellate court that there is a reasonable likelihood that the error affected the verdict. *Kotteakos v. United States*, 328 U.S. 750, 763–64, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946). On the other hand, if the error is constitutional, the burden shifts to the Government to persuade the appellate court beyond a reasonable doubt that the error did not affect the verdict. *See Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967), explaining *Fahy v. Connecticut*, 375 U.S. 85,

---

1. I am not sure that our definition of plain error in *United States v. Fisher*, 21 MJ 327, 328 (1986), survived the Supreme Court's definition in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *Fisher*, relying on *United States v. Young*, 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1, included a fourth element not required by *Olano*, that the error "had an unfair prejudicial impact on the jury's deliberations." 21 MJ at 328. In *Olano* the Supreme Court specifically declined to address the question "whether the phrase 'affecting substantial rights' is always synonymous with 'prejudicial.'" 507 U.S. at 735, 113 S.Ct. at 1778. We need not resolve the question in order to decide this case, and so I join the majority opinion.

2. *See* 41 MJ 213, 229 n. * (1994).

86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171 (1963). Unlike Article 59(a) and the plain-error doctrine that look at the impact on "substantial rights," harmless-error analysis looks at the likelihood that the error affected the verdict. The court below appears to have overlooked this distinction.

Applying the foregoing principles to this case, I am satisfied that appellant demonstrated a plain error that "affect[s] [his] substantial rights," thus satisfying *Olano*. I am also satisfied that he demonstrated that the error "materially prejudice[d] ... [his] substantial rights," thus satisfying Article 59(a). Because the error was of constitutional dimension, the burden shifted to the Government to convince this Court beyond a reasonable doubt that the error did not affect the findings of guilty. The Government did not meet that burden. Accordingly, I join the majority in reversing the decision of the court below.