UNITED STATES, Appellee,

v.

Jonathan E. SIDWELL, Private,
U.S. Army, Appellant.

No. 98–0595.
Crim.App. No. 9601596.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 13, 1999.

Decided Aug. 13, 1999.

SULLIVAN, J., delivered the opinion of
the Court, in which COX, C.J., and CRAW-
FORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain Donald P. Chis-
holm* (argued); *Colonel John T. Phelps, II,
Lieutenant Colonel Adele H. Odegard,* and
*Major Holly S.G. Coffey* (on brief); *Lieuten-
ant Colonel Michael L. Walters* and *Captain
T. Michael Guiffre.*

For Appellee: *Captain Mary E. Braisted*
(argued); *Colonel Russell S. Estey* (on brief);
*Colonel Joseph E. Ross, Lieutenant Colonel
Frederic L. Borch, III, Lieutenant Colonel
Eugene R. Milhizer,* and *Major Randy V.
Cargill.*

Judge SULLIVAN delivered the opinion
of the Court.

During August and September of 1996,
appellant was tried by a general court-mar-
tial consisting of officer members at Fort
Benning, Georgia. Pursuant to his pleas, he
was found guilty of absence without leave
and disobeying a noncommissioned officer, in
violation of Articles 86 and 91, Uniform Code
of Military Justice, 10 USC §§ 886 and 891,
respectively. Contrary to his pleas, he was
found guilty of aggravated assault by inten-
tionally inflicting grievous bodily harm, in
violation of Article 128, UCMJ, 10 USC
§ 928. He was sentenced to a dishonorable
discharge and confinement for 3 years.

On December 31, 1996, the convening au-
thority approved the adjudged sentence. On
March 5, 1998, the Court of Criminal Appeals
affirmed the findings of guilty, but as to the
aggravated assault affirmed only the lesser-
included offense of assault with a dangerous
weapon or other means or force likely to
produce death or grievous bodily harm. The
court then reassessed the sentence and af-
firmed a bad-conduct discharge and 2 years'
confinement.

This Court granted review on July 27, 1998, on the following issue assigned by appellant:

WHETHER THE TRIAL COUNSEL COMMITTED ERROR OF CONSTITUTIONAL MAGNITUDE WHEN HE ELICITED TESTIMONY THAT APPELLANT INVOKED HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION.

We hold that the Government witness' brief mention of appellant's "invoking his rights" when in custody for the charged offenses was an isolated and collateral comment which was harmless beyond a reasonable doubt under the circumstances of this case. *United States v. Garrett*, 24 MJ 413, 417–18 (CMA 1987); *cf. United States v. Riley*, 47 MJ 276 (1997).

The Court of Criminal Appeals found the following facts concerning the granted issue:

Appellant was not a model soldier. While training with his company at the National Training Center, Fort Irwin, California, he refused the order of a noncommissioned officer (NCO) to report to his scheduled kitchen police duty on 1 May 1996. He was returned to Fort Benning, Georgia, the next day under NCO escort. *Private Sidwell was restricted, for the most part, to the Charge of Quarters (CQ) area where he slept and was under guard by the CQ runners twenty-four hours a day.*

*At about 0115 on 12 May,* Sergeant (SGT) Jones entered the barracks and found Private First class (PFC) Guinard [appellant's CQ guard] lying face down on the tile floor near the CQ desk. *The appellant was missing.* Upon being aroused, PFC Guinard grabbed the back of his head and said he had a bump on the head and a headache. At SGT Jones' suggestion, they started for the hospital. As soon as the two got to the barracks door, PFC Guinard noticed his car was missing. Instead of proceeding for medical attention, SGT Jones and PFC Guinard waited at the company for the Military Police to arrive and take a report.

When they finally arrived at the hospital emergency room, the examining doctor found a small bump on the back of the victim's head, and diagnosed a concussion based solely on PFC Guinard's claimed unconsciousness for fifteen minutes. The victim was not disoriented and no bumps, bruises, or abrasions that could have resulted from a fall to a tile floor were found on PFC Guinard's face. He was given medication for the headache. There were no follow-up consultations with medical personnel.

*On 21 May, appellant turned himself in to authorities at Oakland Army Base, California. When read his Article 31, UCMJ, rights, he invoked.* At some point while being processed by military law enforcement officials, PV1 Sidwell asked how much time he could get for auto theft.

Charges of larceny, robbery, aggravated assault, and AWOL were preferred against appellant on 22 May 1996. On 18 July, both original and additional charges were referred to a general court-martial. He was arraigned on 2 August 1996.

Unpub. op. at 1–2 (emphasis added.)

PFC Guinard was the principal government witness in this case, and he testified to the facts surrounding his assault and the theft of his car. The Government's last witness on the merits was Mr. McGunagle, a former military law enforcement agent. He was called to testify to appellant's post-invocation question concerning his probable jail time for auto theft. He testified as follows:

Q: Okay, could you explain—at some point did you interview the accused?

A: Ah—yes.

Q: Did he make any statements to you?

A: *Subsequent to his invoking his rights,* he made—

DC: Sir, objection at this time. We need a 39(a).[*]

MJ: Sustained.

MJ: Okay, members, we're ... going to temporarily excuse you at this point for a period of approximately five to ten minutes. We will—hopefully we'll reconvene at that point. If we're going to have prob-

---

* Art. 39(a), UCMJ, 10 USC § 839(a).

lems doing that I will—I'll notify you shortly.

MJ: We're in recess.

(Emphasis added.)

A hearing on this matter then ensued outside the presence of the members. There it was said:

DC: Sir, at this time the defense calls for a mistrial.

MJ: Okay.

TC: Sir, I believe that I attempted to tap dance all the way around that and did not—

DC: No even—

MJ: Just a second, counsel.

DC: Yes sir; I'm sorry. Thank you, Your Honor.

TC: —and did not request that—anywhere near that response. I just wanted what the statement was.

MJ: Okay—

TC: And I believe a curative instruction would be appropriate.

The military judge considered extensive argument from the parties on whether a mistrial should be granted. He then took the defense motion under advisement until the next morning. The military judge reopened the Article 39(a) session and questioned the parties about appropriate remedies, other than granting a mistrial. After again strenuously arguing for a mistrial, defense counsel said:

Sir, the defense feels that the only appropriate remedy is a mistrial because of that devastating blow, because of this devastating violation of Private Sidwell's rights. At the minimum there should be a curative instruction and the Government would be prohibited from presenting any further evidence from this witness and they should be instructed to exclude any statements presented by this witness and Agent McGunagle should never be seen in this courtroom again.

Ultimately, the military judge accepted the defense's alternative proposal; ordered Agent McGunagle's testimony stricken from the record; and prevented him from further testifying in this case. He also gave the following limiting instruction:

MJ: Members, before we broke you heard a Special Agent, I believe his last name is pronounced McGunagle testify that the accused exercised his constitutional rights at some point on the 21st of May. This testimony by Special Agent McGunagle is highly improper and violated the accused's constitutional rights in fact. Under our system of law every citizen has their constitutional rights. Each of us enjoys these rights. Each of you, myself, the counsel, and Private Sidwell have constitutional rights that must be honored. All Americans and all Soldiers when suspected of crimes and advised of their rights have at anytime an absolute, legal, and moral right to exercise their constitutional privileges. That the accused did so in this case must in no way be held against him nor may you make any inference from the fact that he may have done so or may not have done so. You must disregard in its entirety any testimony given in this case by Special Agent McGunagle, including that testimony that the accused may have terminated the interview.

The only thing that matters in this case is that the accused always has had and remains and has [sic] a constitutional right to exercise his legal prerogative and no adverse result may obtain from his exercise of those constitutional rights. You may not infer guilt or you may not infer any other fact from the fact that he has exercised his constitutional rights. And that is my instruction to you. Are you all able to follow that instruction? If so, simply raise your hand.

MBRS: [Positive response.]

The Government then rested, and the members never heard the agent's testimony on the substance of appellant's spontaneous question about his probable punishment for the auto theft charge. The military judge later gave a general instruction on invocation of rights by a non-testifying defendant as part of his findings instructions. Appellant was found guilty of aggravated assault of PFC Guinard but not guilty of the robbery and theft of his car.

Appellate defense counsel asks this Court to set aside all the findings of guilty in this case on the basis of a single comment made by a prosecution witness that appellant invoked his rights after he surrendered himself to the military authorities. He contends that trial counsel erroneously adduced this testimony in violation of the Constitution and that the Government was required to show such error was harmless beyond a reasonable doubt. He finally concludes that the curative instruction cited by the Government was not sufficient to prevent prejudice in appellant's case because "the ends of justice required the military judge to grant a mistrial." Final Brief at 5.

We recently entertained a similar question in *United States v. Riley, supra,* concerning impermissible comments on an accused's exercise of his rights under Article 31, UCMJ, 10 USC § 831. There, Judge Effron, writing for this Court, conducted a prejudice analysis based, in part, upon the effect of the error on the other prosecution and defense evidence presented in the case. 47 MJ at 279–80; *see generally United States v. Gonzalez,* 921 F.2d 1530, 1549 (11th Cir.1991). In an earlier case, involving improper reference to an accused's invocation of his constitutional rights to silence and counsel, this Court focused primarily on the nature of the comment and the curative instruction given to the members in determining whether such error was harmless beyond a reasonable doubt. *See Garrett,* 24 MJ at 418.

Here, the military judge found, and the parties to this appeal agree, that constitutional error occurred. We accept this conclusion. We must now determine what prejudice, if any, resulted from this error. In light of our case law, we conclude that all of the circumstances noted above should be considered in determining whether such error was harmless beyond a reasonable doubt. *Id.; see also United States v. Mobley,* 34 MJ 527, 531 (AFCMR 1991).

Turning first to the improper rights-invocation evidence, we conclude that, viewed in its entirety, it did not have great potential to prejudice appellant. It was an isolated reference to a singular invocation of rights by appellant. *See Garrett, supra* at 416–17 (one reference to a single invocation); *cf. Riley, supra* at 278 (reference to three invocations of rights by accused). It was extremely brief, providing no details as to the rights invoked or the offense or offenses for which these rights were invoked. *Id.* In addition, the trial judge immediately called an Article 39(a) session to consider its admissibility, and when court reconvened the next day, he promptly instructed the members to disregard it. Finally, this evidence was not affirmatively exploited by trial counsel to buttress his case against appellant on any of the charged offenses. *See generally Hill v. Turpin,* 135 F.3d 1411, 1417–18 (11th Cir.1998) (collecting cases considering the effect of prosecutor's failure to exploit the rights-invocation evidence in a harmless error analysis).

Turning next to the curative instruction given by the judge, it is similar to the one approved in *Garrett, supra* at 417. He unequivocally instructed the members to disregard this witness' testimony on this matter for all purposes. Moreover, he *voir dired* the members on their understanding of his instruction and gave a more general rights-invocation instruction at the close of this case. *Id.* at 418. In these circumstances, we can safely presume that the members did what the military judge told them to do.

We also must consider the probable impact of this inadmissible evidence on the members' deliberations. *See United States v. Riley, supra.* Although circumstantial in nature, the Government's case was overwhelming and rested largely on the uncontradicted testimony of appellant's guard, PFC Guinard. Appellant's sole defense was an attack on the motives and military character of Guinard and the physical improbability of his version of the events. The inadmissible invocation testimony had no direct bearing on these questions concerning Guinard's truth-telling. Moreover, appellant did not testify, and therefore, he could not be impeached on this basis. In our view, the impact of the evidence in this case, even if considered by the members, would have been marginal. *See Gonzalez, supra* at 1550

(error harmless where evidence showing guilt is otherwise strong); *cf. United States v. Riley, supra; Turpin,* 135 F.3d at 1418 (error not harmless where rights invocation evidence used to impeach plausible story offered by defendant).

Finally, the military judge accepted defense counsel's reluctant proposal (only if mistrial not declared) to continue this trial under certain conditions. As an alternative to mistrial, counsel proposed that the offending testimony be struck, curative instructions be given, and that the government agent not be allowed to testify. This last condition, opposed by the Government, prevented Agent McGunagle from testifying to appellant's subsequent spontaneous statement asking "how much time should I expect to get for a stolen car." This testimony would not only have been admissible (*Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *United States v. Rodriguez–Lopez,* 63 F.3d 892, 893 (9th Cir.1995)) but it would have constituted an implied admission by appellant to the charged offenses of larceny and robbery of his guard's automobile. In view of his subsequent acquittal of these offenses, any prejudice in this case is illusory. *See United States v. Raya,* 45 MJ 251, 254 (1996).

The decision of the United States Army Court of Criminal Appeals is affirmed.