# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Lieutenant Colonel SEAN M. AHERN**
**United States Army, Appellant**

ARMY 20130822

U.S. Army Military District of Washington
James W. Herring, Jr., Military Judge (arraignment & motions hearing)
Michael J. Hargis, Military Judge (trial)
Colonel Corey L. Bradley, Staff Judge Advocate (pretrial)
Colonel James R. Agar II, Staff Judge Advocate (post-trial)


For Appellant:  Mr. Kirk Sripinyo, Esquire (argued); Captain Amanda R. McNeil Williams, JA; Mr. Kirk Sripinyo, Esquire; Mr. Samuel C. Moore, Esquire (on brief and reply brief).

For Appellee:  Captain Samuel E. Landes, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Daniel D. Derner, JA; Captain Samuel E. Landes, JA (on brief).


24 August 2016

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of aggravated sexual assault of a child, one specification of aggravated sexual assault by causing bodily harm, one specification of assault consummated by battery, three specifications of indecent acts upon a child, and one specification of child endangerment, in violation of Articles 120, 128 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 920, 928, 934 (2000, 2006 & Supp. III 2010).  The panel sentenced appellant to a dismissal and confinement for seventeen years and six months.  The convening authority approved the adjudged sentence.

Appellant raises six assignments of error, two of which merit discussion,[1] but no relief. Appellant's remaining assignments of error merit neither discussion nor relief. The matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), though considered, lack merit.

## BACKGROUND

Appellant sexually abused his step-daughter, SS, in a serial fashion for many years. SS ultimately informed her mother, Mrs. SA, of the abuse, and appellant admitted to SA that he had sexual intercourse with SS. However, SA did nothing to ensure appropriate law enforcement intervention, and over time she grew fearful that her failure to report the abuse jeopardized her professional credentials as an educator. After SS's natural father learned of the abuse, he demanded that SS return to live with him and sought counseling for her. Now fearful that SS would be free to report the abuse, SA accompanied appellant to see a criminal defense attorney in May 2011. In this consultation, SA and appellant decided beforehand to collude to and falsely characterize SS's allegations as a fabrication in retaliation for a strict home life. The only apparent result of this meeting was SA's continued decision not to report that her daughter was the victim of sexual abuse.

Subsequently, SA decided to end her marriage to appellant. She wrote an email to him on 30 March 2012 saying she intended to divorce him '"on grounds of adultery." The "adultery" was a reference to appellant's sexual intercourse with her daughter, SS.

In July 2012, SS personally reported appellant's sexual abuse to civilian law enforcement authorities. On 5 July 2012, an investigator attempted to facilitate a pretext telephone call between SS and appellant. To that end, SS sent appellant a text message (appellant did not respond):

> I need to talk to you people are coming to talk to me about
> what happened to me and I don't want to get anyone in
> trouble and I just want to move past which you did so I
> will lie for you if that's what you want I need to know
> what you want 'cause they are on their way.

---

[1] The first of these assignments of error asserts that it was plain error when the military judge allowed trial counsel to argue that appellant failed to deny several pretrial allegations "because he was guilty." The second asserts the military judge committed plain error in permitting trial counsel to argue that appellant's consultation with a criminal defense attorney was indicative of his guilt. We heard oral argument on these two assigned errors on 3 August 2016.

Also on 5 July 2012, the investigator recorded a pretext phone conversation between SS and appellant. After identifying herself, SS said to appellant:

> I really need to talk to you. Something happened and I was talking to [RB] and he told his parents and there are people coming to talk to me and Mom. And I don't know what to tell them. I just--I don't know what to do.

Appellant then terminated the call.

On 16 July 2013, the investigator recorded multiple pretext phone conversations between SA and appellant. In one of them, SA told appellant she had disclosed to her counselor that appellant had engaged in an "affair" with SS.

During opening statements, defense counsel said the following:

> The key thing that happened in May of 2011 was that [appellant] and Mrs. [SA], together, went to see an attorney in Annapolis, Maryland after [SS] told her Dad about these allegations. Mrs. [SA] tells this attorney an account that is totally different than what we anticipate she will tell you. I want you to listen hard to Mrs. [SA] when she talks about what she told this attorney. She told the--I expect that she will tell you that the attorney--that she told the attorney that [SS] was making allegations against [appellant] and that [appellant] is saying they are not true. She goes there in support of him. She doesn't tell the attorney anything about these allegations having received a supposed admission from [appellant]. She's there supporting him. And you will see--you will see that at the conclusion of this case is that the explanation for that is that he--there was no admission, and that she believed him.

On direct examination, government counsel and SA addressed the consultation with the Annapolis attorney. She testified SS began to receive counseling after returning to live with her father, Mr. RS. SA grew concerned that SS would reveal appellant's abuse to the counselor, who would in turn report it to appropriate authorities. After sharing this development with appellant, SA accompanied him to the attorney and told the "cover story" that SS was fabricating abuse allegations in retaliation for limitations they placed on SS's interactions with her friends and boyfriend.

3

The defense did not object to this testimony. Instead, on cross-examination, defense counsel followed up regarding the attorney consultation:

> CDC: [You] told him that you were aware that your daughter was making an allegation against [appellant], correct?
>
> SA: Yes.
>
> CDC: And you told this lawyer that [appellant] had said it was not true?
>
> SA: Yes, that is what he told the lawyer. Yes.
>
> CDC: That is what you told the lawyer too, correct?
>
> SA: I told--I supported him on that. Yes.
>
> CDC: And you also told [GC] about [SS] having coming back to Maryland and you explained that the reason you both had put her on the plane--or you had put her on the plane was because she was out of control, right?
>
> SA: That's what we told the attorney. Yes.

In closing argument, government counsel argued:

> Everything [appellant and SA] do is an indicia of guilt. They visit a criminal defense attorney together. Why? Every time a new person discovers the abuse they act in concert to prevent [SS] from saying anything to anyone....
>
> In Prosecution Exhibit 3, panel members, that is the [pretext] phone call between [SA] and [appellant]. You have to listen to that because [SA] says verbatim, "I told her--I told my counselor we [sic] were having an affair." And what does [appellant] say? Does he ever say what are you talking about? Are you crazy? She says, we are having--"You were having an affair with my daughter." What would you say if your ex-wife says this to you? What does [appellant] say? Listen to it. He says, "[SA], are you kidding. I am on the phone." Who would say that. I am on the phone? [SA] continues, "I didn't get the

4

whole story, [appellant]." Does he ever say what are you talking about? What story? I didn't give you a story. Does he ever say anything like that[?] He says, "I am not going into that stuff." Panel members that is an indicia of guilt. There is no denials by [appellant]. There is no evidence that he ever denies any of this. Defense Exhibit V, this is an e-mail we saw between [SA and appellant], right? And that is the one where [SA] threatens him and says, "I am going to divorce you on grounds of adultery." And in his next e-mail--and you can see what he responds. Does he ever say what adultery? What are you talking about? He never denies any of it. Defense Exhibit BBB, this is a text message that Shannon sends him saying it has come out, people are coming to talk to me. He never denies anything. Why is that? Because he is guilty.

The defense did not object to this line of argument. In its closing argument, defense counsel said:

Would a woman who believes that her daughter was raped by her husband continue to live in that house with him? And I submit to you, ladies and gentlemen, your recollection is what matters but [SA] said to you, directly to you, "I believed my daughter when she said [appellant] raped her." She did not say it was just said. She said, "I believed it at that time." Would a woman who believes that have sex again with that husband? Would a mother who believed that go together to a criminal defense attorney to talk about false allegations being made by her own daughter?

[. . . .]

I will submit to you that [government counsel] spent a great deal of his closing about the [pretext] phone calls. And I submit that he said to you that [appellant] never denied the allegations as [SA] is bringing them up. . . . But he did deny it in the call. I urge you to ask the Court to hear it again if you need to. . . . [Appellant] absolutely denied it. Listen to the call again. I mean--if you listen to the call again you will hear he said, "[SA] you are nuts. We are going through a divorce. Put [CA] on the phone please." And in the call--the [pretext] call with [SS] he

5

hangs up. Of course he hangs up. The last conversation he's had with this woman is that he knows that she's made false allegations about him and then he gets a text out of the blue for the first time in a year; of course he doesn't answer. Why would he give--talk to her at all? She hates him. She's made false allegations about him. He's fighting a divorce over these allegations. Of course he doesn't respond to her.

## LAW AND ANALYSIS

Considering the absence of an objection to the government's trial advocacy described above, we review for plain error, which occurs "when: (1) an error was committed; (2) the error was plain, clear, or obvious; and (3) and the error resulted in material prejudice to an appellant's substantial rights." *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007), *citing United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998).

### A. Improper Argument - Admissions by Silence

On appeal appellant asserts that the trial counsel offered improper argument when he argued that the panel should give weight to appellant's silence when accused of the offenses. Appellant concedes we must review this issue for plain error.

In support of his argument, appellant relies on Military Rule of Evidence [hereinafter Mil. R. Evid.] 304(a)(2) (C1, 15 May 2013)[2] to say that any admission by silence is inadmissible after the commencement of an investigation, and therefore was improper argument.

However, prior to considering whether the trial counsel's arguments constituted plain error, we must first address whether it was plain error to admit appellant's "silence" in the first instance. Appellant did not move to exclude appellant's statements and admissions, to include the alleged admissions by silence.

---

[2] Exec. Order No. 13,643, 78 Fed. Reg. 29,559 (May 24, 2013), effective as of the date of the order, amended various provisions of the Military Rules of Evidence, to include Mil. R. Evid. 304. Appellant's arraignment occurred on 17 June 2013. References herein to the Military Rules of Evidence, therefore reflect the changes in Exec. Order 13,643.

*1. Forfeiture by failing to file a motion under Mil. R. Evid. 304*

Prior to introducing appellant's statements the government was required to disclose to the defense all relevant statements by appellant. Mil R. Evid. 304(d). This would include admissions by silence, as the whole reason the government offers them is because they are communicative statements.

After receiving such notice, the defense is required to file a motion to suppress or file an objection to the admission of the accused's statements. Mil R. Evid. 304(f). "In the absence of such a motion or objection, the defense may not raise the issue at a later time except as permitted by the military judge for good cause shown." Mil. R. Evid. 304(f)(1). The government would then have had the burden of establishing the admissibility of the evidence. Mil. R. Evid. 304(f)(6).

Here, no motion was filed. Accordingly, the statements were admitted for all purposes for which they were relevant. Mil. R. Evid. 402(a). Thus, while appellant treats this as an issue of improper argument, the first issue is whether appellant's admissions by silence were admissible in the first instance.

The failure to file a motion to exclude evidence (even if for a limited purpose) is significant in this case as it deprives us of a developed record for review. For example, as there was no litigation on the matter, the parties' discovery practice regarding the admissions by silence are not part of the record of trial. *See* Rule for Court-Martial [hereinafter R.C.M.] 1103(b)(2)(defining contents of the record). We cannot assume (in the absence of a developed record caused by appellant's failure to object) that the trial counsel failed to provide notice of his intent to introduce appellant's admissions–to include admissions by silence. On appeal, as plain error applies, it is appellant's burden to establish that there was error, that the error was obvious, and that appellant was prejudiced by the error. *United States v. Girouard*, 70 M.J. 5, 18 (C.A.A.F. 2011)(citing *Powell*, 49 M.J. at 463-65).

We find appellant has failed to meet his high burden of establishing plain error. The record is ambiguous in numerous regards. As will be discussed later, whether appellant knew he was under investigation, whether the law requires that he knew he is under investigation, and whether appellant actually made any admissions by silence are all unclear from the record. With these ambiguities, any error did not amount to plain and obvious error.

*2. Under Mil. R. Evid. 304(a)(2), does an accused need to know he is under investigation?*

We next turn to an issue over which the parties sharply disagree. Mil. R. Evid. 304(a)(2) provides that "[f]ailure to deny an accusation of wrongdoing is not

an admission of the truth of the accusation if at the time of the alleged failure the person was under investigation or was in confinement, arrest, or custody for the alleged wrongdoing." The question is whether the rule requires a suspect to know he is "under investigation" in order to receive the rule's protections. Mil. R. Evid. 304(a)(2); *See United States v. Cook*, 48 M.J. 236, 240 (C.A.A.F. 1998) (interpreting the rule's predecessor to mean "that silence by an accused who is under investigation will not logically support an inference of guilt.").[3]

Appellant asks us to apply the "plain meaning" of the rule, and determine that any admission by silence is inadmissible once an investigation has commenced. That is, a suspect's silence may not be used against him once, somewhere in the world and even if unbeknownst to him, an investigation into his wrongdoing has commenced. Citing *Cook*, the government argues that the President only intended to limit admissions by silence when an accused knows or reasonably should know he is under investigation.

Although there are several cases interpreting Mil. R. Evid. 304(a)(2), in each of them the accused was being or had been questioned by law enforcement and there was no issue of whether the accused knew he was being investigated. *See e.g. Cook*, 48 M.J. at 240 (improper to admit accused's silence in response to friend's inquiry when accused previously had been read his rights by an special agent from the Office of Special Investigations); *United States v. Alameda*, 57 M.J. 190, 198-99 (C.A.A.F. 2002)(improper to admit law enforcement officer's testimony as to accused's silence after apprehension, but before advisement of rights); *United States v. Riley*, 47 M.J. 276, 279-80 (C.A.A.F. 1997)(improper for agent from Naval Criminal Investigative Service to testify to accused's election to remain silent after being advised of his rights). Accordingly, this appears to be an issue of first impression.

At oral argument, appellant noted if the language of a statute is clear, the inquiry ends. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007). However, Section III of the Military Rules of Evidence has generally been treated in an exceptional manner reflecting both its purpose and creation. As this involves an

---

[3] At all times relevant to this opinion, appellant was not in confinement, arrest or custody. When SS reported his sexual abuse to law enforcement authorities in early July 2012, an investigation began. Because the strictures of Mil R. Evid. 304(a)(2) were not litigated at trial, we can only say with certainty based on the record before us that, as of 5 July 2012, appellant was the subject of a criminal investigation for crimes of which he was convicted.

issue of first impression we will discuss briefly the unique status of the Section III rules of evidence.

Mil. R. Evid. 304, like all Section III rules, has no counterpart in the Federal Rules of Evidence. The drafters stated that the Section III rules "represent a partial codification of the law relating to self-incrimination, confessions, and admissions, search and seizure, and eye-witness identification." *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], Section III analysis at A22-5. The Section III rules were created because of "the large numbers of lay personnel who hold important roles within the military criminal legal system."[4] *Id.*

Of course, when there is partial codification of case law a problem arises when the case law changes faster than the President can update the rule. Consider for example the Supreme Court's 2009 decision on the exclusionary rule in *United States v. Herring*, 555 U.S. 135 (2009). The Court of Appeals for the Armed Forces (CAAF) adopted the reasoning in *Herring* in 2014, and the President only changed the rule in June of 2016. *See United States v. Wicks*, 73 M.J. 93, 104 (C.A.A.F. 2014); Exec. Order No. 13,730, 81 Fed. Reg. 44,483 (May 20, 2016).

In general, our superior court has focused not on the literal interpretation of a Section III rule, but rather the case law it intended to implement. In *United States v. Adams*, 74 M.J. 137 (C.A.A.F. 2015), the court split 3 to 2 on the degree to which a confession needed to be corroborated. However, all five *Adams* judges focused not only on the rule but also on how to best implement the Supreme Court's decision in *Opper v. United States*, 348 U.S. 84 (1954) and other relevant case law.

Perhaps more on point, when our superior court has interpreted Mil. R. Evid. 304(a)(2), they have often looked to see how the federal circuits apply similar principles. *See Alameda*, 57 M.J. at 198-99 (summarizing federal circuit case law in interpreting Mil. R. Evid. 304(a)(2)). This is not to say that the Section III rules are more akin to a treatise. As the drafters stated, Section III represents a "codification" even if only a "partial codification." *MCM*, Section III analysis at A22-5.

Accordingly, we determine that in interpreting Mil. R. Evid 304(a)(2), we should follow our superior court's practice and look at the purpose of the rule, as

---

[4] The rules were first promulgated in 1980. Exec. Order No. 12,198, 45 Fed. Reg. 16,932 (Mar. 14, 1980). The drafters explained by way of example, that promulgation was necessary to assist the non-lawyer legal officer on a ship who has limited legal training, no access to a law library, nor any means to consult with an attorney. *MCM*, Section III analysis at A22-5. Advances in communication technology since 1980 may have undermined this premise.

well as the case law the drafters were intending to implement. Several considerations weigh in favor of taking this approach.

First, the drafter's analysis to the Section III rules states that the rules "represent a compromise between specificity, intended to ensure stability and uniformity . . . and generality, *intended usually to allow change via case law."* *MCM*, Section III analysis at A22-5 (emphasis added). That is, the drafters in some instances intentionally wrote the rules broadly with the expectation that case law would fill in the ambiguities.

Second, consider the President's authority in crafting Mil R. Evid 304(a)(2). The President's authority to promulgate rules stems from Article 36, UCMJ. However, this delegation of rule-making authority is not absolute. In crafting rules of evidence and procedure the President is required ("shall"), as long as it is practicable, to apply the rules governing criminal trials in the United States district courts. UCMJ art. 36(a). While the federal circuits are split on when an accused's silence may be used against him, none provide for pre-arrest, pre-*Miranda*[5] exclusions of the kind appellant seeks here. *See Alameda*, 57 M.J. at 198-99. No court asks, for example, whether there was an investigation of which appellant was unaware. It would be inconsistent with Congress's delegation to the President to read the rule in a manner that is inconsistent with all federal circuits in the absence of a military specific requirement.[6]

Third, and relatedly, Mil. R. Evid. 304(a)(2) is part of the President's implementation of Article 31, UCMJ. As military practitioners are aware, from its inception Article 31 has not been interpreted literally. Article 31(b), UCMJ, if applied literally, "would potentially have a comprehensive and unintended reach into all aspects of military life and mission." *United States v. Cohen*, 63 M.J. 45, 49 (C.A.A.F. 2006)(citing *United States v. Gibson*, 3 C.M.A. 746, 752, 14 C.M.R. 164, 170 (1954)). Accordingly, case law interpreting Article 31 provides a suitable framework for interpreting Mil R. Evid. 304(a)(2). That framework focuses not on a literal reading of the rule, but on its purposes. Article 31(b) rights, for example, are not usually triggered by undercover agents or by questions from persons unrelated to an investigation. *United States v. Jones*, 73 M.J. 357, 361 n.5 (C.A.A.F. 2014). As

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] For example, some federal circuits prohibit admissions by silence after *Miranda* warnings are triggered. *Alameda*, 57 M.J. at 199 (citing *United States v. Velarde-Gomez*, 269 F. 3d 1023, 1028 (9th Cir. 2001)). The CAAF in *Alameda* adopted this line of reasoning. *Id.* In the military context it would be consistent to use Article 31(b) rights in lieu of *Miranda*.

Mil. R. Evid. 304(a)(2) implements Article 31, it follows that the interpretive framework for Article 31 should follow.

Fourth, by focusing on the temporal trigger of when an investigation began, we lose sight of the touchstone of rules of evidence: reliability. If an accused makes an admission by silence under Mil. R. Evid. 304(a)(2), his admission is no more or less reliable based on whether there is–unknown to him–an investigation pending. The evidentiary weight of his admission, whatever it may be, is not any less simply because unbeknownst to him someone has begun an investigation.

Fifth, Mil. R. Evid. 304(a)(2) prohibits using admissions by silence whenever the suspect is "under investigation or was in confinement, arrest, or custody" for the wrongful act. For all practical purposes if someone is arrested, confined, or in custody, there is already an investigation. *See generally* R.C.M. 304, 305. Under appellant's read of the rule, the triggers of arrest, confinement, or custody are rendered surplusage. An investigation, however brief, will always precede arrest or confinement.

Sixth, to the extent that prior cases have addressed this issue, they appear to have assumed that any investigation does not trigger Mil. R. Evid. 304(a)(2). In *Clark* the police arrived at the suspect's house to conduct a search. Clearly an investigation was underway. Yet the CAAF's decision focused on the investigator's behavior after entering the house. *United States v. Clark*, 69 M.J. 438, 441 (C.A.A.F. 2011). If the investigation triggered the exclusions of Mil. R. Evid. 304(a)(2), then there would be little point in discussing when the suspect became aware of the investigation.

Finally, appellant's interpretation of Mil. R. Evid. 304(a)(2) will result in increased and unnecessary litigation in some (limited) circumstances. While it is often easy to factually determine when an investigation began, it is not so easy to determine when a statement was made. So, assume an investigation began at noon on a Tuesday. That same day, the suspect made an admission by silence to a friend under Mil. R. Evid. 304(a)(2). Under appellant's theory, the admissibility of the statement would turn not on its reliability or the accused's subjective belief that he was under investigation, but rather whether which side can prove by a preponderance of evidence that the admission by silence was made before or after noon. Real life conversations are seldom contemporaneously recorded and documented with sufficient rigor.

Accordingly, we find that Mil. R. Evid. 304(a)(2) is triggered by an investigation when the accused is aware of the investigation. Whether an accused is aware of an investigation should be determined using the same objective test as is used in the Article 31(b) context. *Jones*, 73 M.J. at 362 (whether a rights warning is

triggered "is determined by assessing all the facts and circumstances at the time of the interview to determine whether the military questioner was acting or could reasonably be considered to be acting in an official law-enforcement or disciplinary capacity. The second determination is judged by reference to a reasonable man in the suspect's position."). *Id.* (citations and internal quotation marks omitted).

*3. Analysis*

Appellant asserts trial counsel improperly referenced several admissions by silence in his closing argument. We address each in turn.

We summarily resolve against appellant his claim that the rule prohibited the government from arguing he made an admission by silence in his email communication with SA. The rule clearly does not cover this exchange between the two, for it occurred well *before* any investigation began. To the extent the record is ambiguous, any ambiguity is caused by an undeveloped record created by appellant's failure to object.

A different analysis is required regarding appellant's response or lack thereof to the pretext communications *after* investigation had commenced. As related above, Mrs. SA called appellant repeatedly with the pretext of discussing his crimes against SS. Mrs. SA's calls were at the behest of law enforcement and were made as part of an active investigation.

The record, however, is ambiguous as to whether appellant knew there was a criminal investigation underway. While some of the statements made by SA would appear to indicate that something was afoot, it is appellant's burden on appeal to establish the facts necessary in the record to support an allegation of plain error. As discussed above, we interpret Mil. R. Evid. 304(a)(2) as requiring that a suspect know he is under investigation for the exclusionary aspects of the rule to apply. Appellant has not met his burden of demonstrating that it was plain and obvious that he knew he was under investigation.

However, even if we were to interpret Mil. R. Evid. 304(a)(2) as appellant does, we still would not find plain error. That is, assuming that Mil. R. Evid. 304(a)(2)'s exclusionary provisions are triggered by any investigation–whether a suspect is aware of it or not–we do not find that on the facts of this case appellant has met his burden of establishing plain error.

We approach the problem from the trial judge's perspective and determine whether the error was clear, plain or obvious to him. We conclude it was not under the facts and circumstances of this case. First, the posture of the evidence at trial combined with appellant's brief on appeal only now enables us-with the benefits of

appellate hindsight and a verbatim transcript-to deduce that an investigation began when SS reported appellant's abuse to law enforcement.  The trial judge, unlike the parties, is usually unfamiliar with the evidence until it comes out at trial.  Second, the verbatim transcript shows us government counsel's argument referred to *both* appellant's response to SA's email and SS's text message.[7]  In this respect, the argument was partly objectionable and partly not, but we cannot characterize it as plainly erroneous from the military judge's perspective in the midst of trial.

In addition to establishing our plain error standard of review, the lack of objection in the context of this particular argument leads us to conclude defense counsel likely decided not to make one.  Had defense counsel soundly objected to government counsel's comment regarding the pretext exchange, the military judge would have likely instructed the panel that government counsel's comment thereon was impermissible-leaving unsaid that the argument regarding appellant's email response was proper.  Such juxtaposition would have been detrimental to appellant's case, particularly when compared to the defense's chosen tactic to argue that government counsel's suggested inferences were unwarranted.

Finally, we are confident that government counsel's brief argument on this tenuous point did not materially prejudice appellant's substantial rights.  There was limited advocacy value to be gained from commenting on appellant's lack of response to SS's pretext communication when considering SA's testimony that appellant admitted having sexual intercourse with SS and SS's detailed testimony about his misconduct.  Three considerations drive us to this conclusion:

First, this is a case where Mrs. SA testified that appellant had repeatedly *admitted* to having sex with SS.  Thus, whatever the weight of appellant's silence in response to one accusation, it pales in comparison to appellant's *actual confession*.

Second, the government's argument that appellant was silent was strained.  Appellant was not silent.  He called his wife's allegations "crazy."  In other words the trial counsel's arguments lacked persuasiveness to a panel that had just heard the actual conversations.

Third, the same conversations that government counsel argued were evidence of guilt appellant were argued by appellant as evidence of his innocence.  Thus, the effect of any improper argument must be understood within the context of the entire argument and trial.

---

[7] Even on appeal, we are uncertain whether government counsel was referring to appellant's pretext phone conversation with SS on 5 July 2012.

### B. *Improper Argument - Attorney Consultation*

We next consider appellant's claim that the trial counsel impermissibly argued that appellant's consultation with a criminal defense attorney was "indicia of guilt."

"The law generally discourages trial counsel's presentation of testimony or argument mentioning an accused's invocation of his constitutional rights unless, for example, an accused invites such testimony or argument in rebuttal to his own case." *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007), citing *United States v. Robinson*, 485 U.S. 25, 32 (1988). While appellant frames this issue as one of constitutional magnitude, the government disagrees and notes the Sixth Amendment right to counsel had not yet attached. We need not resolve this dispute as we find any error harmless beyond a reasonable doubt.

We note with interest appellant's framing this assignment of error as improper argument, while not alleging error regarding the actual testimony about the consultation. At first, this seems incongruous, for if evidence of the consultation is admissible, then it would be fair game for argument. But, as appellant's counsel aptly indicated in oral argument, the dispute is not whether it was per se inadmissible-indeed it was a significant component of the defense case-but whether government counsel's argument thereon was fair.

Nonetheless, we do not find appellant is entitled to relief. First, in context the trial counsel's argument was not directed at inferring that appellant was guilty *because* he went to see a criminal defense attorney. Second, to the extent that this was error, it was invited error.

Considering government counsel's remark within the full context of the trial, we conclude the objective in making it was to convince the panel that SA and appellant were actively colluding by falsely discrediting SS, not to insinuate that the consultation was per se an indicator of appellant's guilt. This is a case where it was *appellant* who first introduced in his opening statement that he and SA went to see a criminal defense attorney. The defense theory was that appellant sought consultation with the attorney because he feared a false accusation from SS. The government sought to mitigate this testimony by arguing that SA was colluding with appellant to cover up appellant's crimes. Neither party argued, however, that appellant consulted with an attorney because he needed legal advice about offenses he had actually committed.

"The invited error doctrine prevents a party from creating error and then taking advantage of a situation of his own making on appeal. As a result, invited error does not provide a basis for relief. The question of whether trial defense counsel invited an error at trial is a question of law, which we review de novo."

AHERN — ARMY 20130822

*United States v. Martin*, 75 M.J. 321 (C.A.A.F. 2016) (internal citations and quotations omitted).

Even assuming, *without deciding*, government counsel's remark was erroneous, it was not plainly, clearly or obviously so given trial defense counsel's open invitation for the factfinder to consider SA's quest for legal advice and, *more importantly*, her motivation in doing so. The defense clearly wanted the panel to conclude that SA disbelieved her daughter; the prosecution, given its turn, wanted the panel to consider it as evidence of collusion between appellant and SA. Appellant used the attorney consultation as a sword to strike a blow to the government case; invited error principles illustrate the unfairness which would obtain if he were allowed to simultaneously use it as a shield.

### CONCLUSION

On consideration of the entire record, the findings and sentence as approved by the convening authority are AFFIRMED.

Senior Judge CAMPANELLA and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

15