**UNITED STATES**

v.

**Scott M. IBARRA, Hospitalman Apprentice (E–2), U.S. Navy.**

**NMCM 98 01600.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 17 Nov. 1997.

Decided 17 May 2000.

LCDR Robert C. Klant, JAGC, USN, Appellate Defense Counsel.

Joseph W. Kastl, Civilian Appellate Defense Counsel.

LCDR Philip Sundel, JAGC, USNR, Appellate Government Counsel.

Before LEO, Senior Judge, TROIDL, Senior Judge, and NAUGLE, Appellate Military Judge.

LEO, Senior Judge:

Contrary to his pleas, the appellant was convicted of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920, at a general court-martial before officer and enlisted members. He was awarded a dishonorable discharge, confinement for four years, total forfeitures, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

We have examined the record of trial, the appellant's ten assignments of error, and the Government's responses. We have also considered the oral arguments presented by appellate counsel. We find merit in the sixth assignment of error.[1]

The appellant contends that the findings and sentence should be set aside because the military judge erroneously elicited testimony that the appellant had invoked his rights in response to a Government investigator's attempt to interview the appellant and search his barracks room. We agree.

## I.

The appellant, a hospital corpsman assigned to the National Naval Medical Center, was charged with raping [NB], an 18–year–old coed whom he had met approximately two weeks earlier. They struck up a friendship shortly after meeting and went out a few times together. Although the appellant was interested in pursuing a sexual relationship, [NB] testified that she was not interested and told him so. She admitted that they had engaged in some passionate kissing and petting at one point. However, she indicated to the appellant that she did not want it to go any further, and he stopped. Accordingly, she believed that she could trust him and thought they were in agreement that they would simply be friends.

On the evening of the incident, [NB] accompanied the appellant to his barracks room after work to have some food and drinks, watch TV, and relax. At some point in the evening, the appellant offered to get some "ecstasy" for her, and she agreed. [NB] testified that she had used this drug once before and knew that it worked like a stimulant. When the appellant returned to the room, he gave her half a pill that she believed to be "ecstasy." She had consumed about three and a half glasses of fortified wine before she took the pill. Approximately twenty minutes after taking the pill, [NB] testified that she experienced "the weirdest feeling." Record at 122. Describing it as unlike anything she had ever felt before, she became extremely woozy and was barely able to move. She remembered that the appellant told her to go into the bathroom and remove her tampon. She complied, but did not know why. Upon returning to the room, she sat down on the couch and remembered the appellant coming over to her before she blacked out.

[NB] testified that when she regained consciousness the room was dark, but she could feel the appellant engaging in sexual intercourse with her. She described the situation as "scary" and felt like she was paralyzed and unable to move her body. Record at 127. Fearing that she would contract a sexually transmitted disease, she asked the appellant if he was wearing a condom. When he said, no, she remembered screaming before she blacked out again. When she again regained consciousness, the appellant was still engaged in sexual intercourse with her. Seeing on the clock in the room that it was 4:30 a.m. and fearing that her parents would be upset, she forced herself to get up, even though she still felt extremely groggy. She grabbed her clothing and hurried out of the room to her car.

[NB] described her difficulty in driving due to her physical state, but was able to arrive home safely. The appellant had followed her on his motorcycle. When she got home, a policeman was there with her parents. She did not tell the officer that she had been raped. Instead, she said that she

1. VI. INFORMATION ABOUT A SEARCH AND SEIZURE IMPROPERLY CAME BEFORE THE MEMBERS WHEN THE ACCUSED WAS SIMPLY STANDING ON HIS CONSTITUTIONAL RIGHTS.

had gotten sick, taken a nap, and lost track of time. However, when her mother later asked her what happened, she broke down and cried, but did not claim that she had been raped.

The following day, feeling confused and uncertain about what had happened, [NB] questioned the appellant. He admitted having sexual intercourse with her, but indicated that she had wanted to do it. She later confided in a co-worker, who suggested that she might have been raped. When she confronted the appellant and asked what kind of pill he had given her, he said that it was Tylenol. Skeptical, she then confided in her 17–year–old sister, who agreed that [NB] was probably drugged and raped. The sister informed their parents, who immediately got [NB] to the hospital for a physical examination and set her up with a rape crisis counselor. No forensic evidence was found and the police were not notified at that point.

Several weeks after returning to college, [NB] decided to file a complaint with the local police and was eventually placed in touch with a special agent from the Naval Criminal Investigative Service [NCIS]. After the NCIS investigation was completed, the appellant was charged with rape and referred for trial to this court-martial.

## II.

At trial, NCIS Special Agent Riccio was called by the Government to testify about his involvement in the case. When counsel had completed their questioning, one of the members submitted a question to the military judge. Appellate Exhibit XV. After the defense counsel waived objection, the following colloquy took place between the military judge and the witness:

Q. You were confronted with an allegation that the accused drugged [NB] and then had sex with her as a result of having incapacitated her, is that basically what you were investigating?

A. That's correct, sir.

Q. Did you then conduct a search of his personal effects or [Bachelor Enlisted Quarters] room looking for a drug that might have accomplished that?

A. *On the day that I attempted to interview him, he had exercised his rights and sought legal counsel. When his attorney came to my office, I requested a permissive search of his barracks room and his civilian attorney denied that request.*

Q. Okay, so the answer is, no?

A. That's correct, sir.

Record at 246 (emphasis added).

The defense counsel continued this line of inquiry on recross-examination:

Q. Agent Riccio, you testified that Hospitalman Ibarra's attorney refused to allow you to do a permissive search, correct?

A. That's correct.

Q. You could have sought a search warrant, however, from the magistrate, is that not correct?

A. We did not feel we had probable cause to get a search warrant.

Q. Did you initiate the process?

A. No, we did not.

MJ: All right, members and counsel, that is enough about whether there was grounds for a search or whether there was consent or not. Suffice it to say, there was no search of the room. Anything further?

TC: No, sir.

DC: No, sir.

Record at 247.

## III.

To preserve an evidentiary issue for appellate review, an accused must make a timely objection at trial. MILITARY RULE OF EVIDENCE 103(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). However, when the accused fails to object and raises a claim of error for the first time on appeal, we will grant relief only if he is able to show "plain error." *United States v. Cardreon*, 52 M.J. 213, 216 (1999); *United States v. Kirt*, 52 M.J. 699, 705 (N.M.Ct.Crim.App. 2000). Plain error is a clear or obvious error that materially prejudices a substantial right of the accused. *Cardreon*, 52 M.J. at 216; MIL.R.EVID. 103(d). In other words, the er-

ror must have "had 'an unfair prejudicial impact' on the findings or sentence." *United States v. Schlamer*, 52 M.J. 80, 86 (1999)(quoting *United States v. Powell*, 49 M.J. 460, 465 (1998)).

■ The Government, in its brief, concedes that it was an "obvious error" for the military judge to allow testimony that the appellant had invoked his right to remain silent and consult with counsel and that his counsel had refused to permit a warrantless search of the appellant's barracks room. Government Brief of 5 January 2000 at 23 (citing *United States v. Riley*, 47 M.J. 276 (1997)). We agree. Accordingly, the only issue before us is whether the error materially prejudiced a substantial right.

In *Riley*, our superior Court found an accused's pretrial right to silence to be a substantial right of "critical importance" that was guaranteed by Article 31, UCMJ, 10 U.S.C. § 831. *Riley*, 47 M.J. at 279. The Court noted:

> It is the well-settled law of this Court that it is improper to bring to the attention of the triers of fact that an accused, upon being questioned on an occasion prior to trial, asserted his rights to counsel or to remain silent.... This principle is founded upon the open-eyed realization that to many, even to those who ought know better, the invocation by a suspect of his constitutional and statutory rights to silence and to counsel equates to a conclusion of guilt—that a truly innocent accused has nothing to hide behind assertion of these privileges.

*Id.* (quoting *United States v. Moore*, 1 M.J. 390, 391 (C.M.A.1976)(footnotes and citations omitted)).

In applying the test for plain error, the Court in *Riley* found material prejudice when testimony from the investigator that the accused had invoked his pretrial right to remain silent was allowed into evidence, without a defense objection, and the military judge failed thereafter to provide a curative instruction. *Id.* at 279–80. The Court concluded that this testimony became the "filter" through which the other evidence was viewed by the members. *Id.* As a result, "these circumstances posed a heightened risk" that the members would infer the accused had something to hide. *Id.*

**IV.**

In this case, Special Agent Riccio made similar references not only to the appellant's exercise of his right to remain silent (U.S. CONST. Amend. V; Art. 31, UCMJ) and his right to seek the assistance of counsel (*United States v. Tempia*, 16 C.M.A. 629, 37 C.M.R. 249, 255, 1967 WL 4235 (1967); MIL. R.EVID. 305(d)), but also his right against unreasonable searches and seizures. U.S. CONST. Amend. IV; *United States v. Stuckey*, 10 M.J. 347, 349 (C.M.A.1981); MIL.R.EVID. 311(a)(2). The military judge should have instructed the members *sua sponte* to disregard this testimony, but he failed to do so. *See Riley*, 47 M.J. at 280; *United States v. Miller*, 48 M.J. 811, 816 (N.M.Ct.Crim.App. 1998).

The Government argues that the appellant was not prejudiced because the invocation of rights was mentioned only in passing by the witness and was not referred to at all by the trial counsel in her arguments. We disagree. The extent to which this testimony is discussed by the witness before the members and whether the trial counsel refers to it during argument are certainly factors for consideration on the issue of prejudice. However, once such evidence comes before the members, we may still find, even without these aggravating factors, that the "real" damage—weakening the presumption of innocence and tainting the members' view of the evidence—occurred "[w]hether the inadmissible evidence came before the members one time or several times," unless there is a timely, curative instruction. *Miller*, 48 M.J. at 815.

As for the Government's argument that the error was not prejudicial because the defense counsel apparently viewed as favorable the fact that the appellant's barracks room was not searched, we reject that argument, as well. The very fact that this evidence was not elicited by the defense in the first instance causes us to doubt the accuracy of the Government's representation. While it may have been due to inadvertence, the

defense counsel was clearly attempting on recross-examination to minimize the impact of this testimony.

In this instance, we must consider all of the circumstances surrounding the admission of the objectionable evidence. *United States v. Sidwell,* 51 M.J. 262, 265 (1999). First, the testimony in question was more than just "an isolated reference to a singular invocation of rights by the appellant." *Id.* The witness indicated that he was unable to conduct a search of the appellant's barracks room because the appellant refused to be interviewed, refused to consent to a search, and exercised his right to consult with legal counsel. Second, the fact that it was in direct response to an inquiry from one of the members makes it less likely that this testimony was overlooked by the panel, as it might be if it was in response to a question from counsel. Third, although the testimony was elicited by the military judge as a result of an inquiry from a panel member, rather than by the trial counsel on direct examination (as it was in *Riley* and *Miller*), we do not believe this distinction is determinative of this issue. In *Moore,* our superior Court held that the admission of similar testimony was reversible error, despite the fact that it was elicited by the military judge and not counsel. *Moore,* 1 M.J. at 391. Finally, the evidence in this case essentially revolved around the credibility of [NB], particularly since the appellant elected not to testify. The other witnesses provided circumstantial evidence about [NB]'s relationship with the appellant and her behavior towards him before and after the incident. Expert testimony addressed the effects of various drugs that the appellant might have given [NB] that night and the type of behavior manifested by victims of acquaintance-rape.

While we find the Government's case to be sufficient to meet its burden of proof beyond a reasonable doubt, it is not without its weaknesses: The testimony of [NB] was sometimes vague as to aspects of the rape itself; her reaction afterwards to the appellant could be interpreted, depending on the expert, as inconsistent with an allegation of rape; and there was little in the way of direct evidence to corroborate her testimony.

Given the state of the evidence and the absence of a curative instruction, we believe there is a "reasonable possibility" that the objectionable testimony may have colored the members' view of the evidence and affected the outcome of the trial. *Miller,* 48 M.J. at 815 (quoting *Moore,* 1 M.J. at 392); *see also Sidwell,* 51 M.J. at 265 (holding that the probable impact of inadmissible evidence on members' deliberations must be considered in light of all other evidence in the case). Accordingly, we find "prejudicial plain error", since we cannot conclude that this error, which was of constitutional dimension, was harmless beyond a reasonable doubt. *Powell,* 49 M.J. at 465; *see also United States v. Carpenter,* 51 M.J. 393, 396 (1999).

V.

We hereby set aside the findings and sentence. The record is returned to the Judge Advocate General for submission to an appropriate convening authority, who may order a rehearing.

Senior Judge TROIDL concurs.

NAUGLE, Judge (concurring in part):

I concur with the majority opinion insofar as it sets aside the findings and the sentence. I would also dismiss the Charge and its Specification with prejudice. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, I am not convinced of the accused's guilt beyond a reasonable doubt. Art. 66(c), UCMJ; *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).