**UNITED STATES**

v.

**Larry A. OLIVER, Staff Sergeant (E–6), U.S. Marine Corps Reserve.**

**NMCM 200000659.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 13 May 1998.

Decided 13 Sept. 2001.

CAPT Mark F. Sullivan, JAGC, USNR, Appellate Defense Counsel.

LT James E. Grimes, JAGC, USNR, Appellate Government Counsel.

Before ANDERSON, Senior Judge, VILLEMEZ, and PRICE, Appellate Military Judges.

PRICE, Judge:

The appellant was tried on various dates in March, April, and May of 1998, by a special court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of making a false claim, presenting a false claim, and using an altered lodging receipt in support of that same claim, in violation of Article 132, Uniform Code of Military Justice, 10 U.S.C. § 932. The approved sentence was confinement for 30 days, reduction to E-1, and a bad-conduct discharge.

We have examined the record of trial, the assignments of error, and the Government's response. The findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant is a member of the Marine Corps Reserve, with a total of about 18 years of combined active and reserve service as of the date of trial. On 25 August 1997, he reported for a period of active duty at Camp Lejeune, North Carolina that was to continue until 27 September 1997. On that same day, he checked into the Bachelor Enlisted Quarters (BEQ), where he stayed until 7 September. On 11 September, he checked back into the BEQ and remained there until 29 September.

On 29 September 1997, he filed a travel claim for his period of active duty. In doing so, he claimed $1,888.00 for lodging expenses and attached a supporting receipt indicating that he stayed at a nearby hotel from 23 August until 11 September. It was apparent that the computer-generated hotel receipt had been altered by hand in several significant aspects: the middle initial of the name of the patron was written as "A," the month of arrival was written as "Aug," the date of departure was written as "11 Sept," and the room rate was written as "1888.00." Thus, as altered, the receipt indicated that a Laurence A. Oliver from York, PA stayed at the hotel from 23 August 1997 until 11 September 1997 and incurred charges totaling $1,888.00. The receipt was also computer-printed with this notation: "(DUPLICATE)." Prosecution Exhibit 6, page 1.

Officials at the disbursing office reviewed the claim package and notified the Naval Criminal Investigative Service (NCIS) of these apparent irregularities. Special Agent Ball was assigned to the investigation. He testified that during an interrogation of 28 October 1997, he advised the appellant that he was suspected of forgery, false official statement and fraud, advised him of his rights and obtained a waiver. During the subsequent conversation, the appellant admitted that: (1) he was on active duty, (2) he did not stay at the hotel, (3) he made the marks on the hotel receipt, and (4) that he submitted the travel claim. He also explained that the marks on the receipt were a mistake. When asked if he would put that information in writing, the appellant refused, and asked to speak to a lawyer. The interrogation ended at that point.

A front desk manager from the hotel testified that a *Lawrence T. Oliver* stayed there for three nights in June 1997 but that, after checking their records for the last two years, *Larry A. Oliver* had never stayed there. She also testified that hotel employees don't normally write on the receipts, but that if they do, they would always initial that handwriting. In response to a member's ques-

tion, she added that the hotel does not ask for identification if somebody requests a copy (or duplicate) of a receipt. If somebody asks for a receipt copy, one is provided.

## Lack of Jurisdiction

The appellant contends that the Government "failed to demonstrate any factual basis for the exercise of subject matter jurisdiction" over the submission of the travel claim in question. Appellant's Brief of 16 Mar 2001. He explains that, under the terms of the appellant's orders, his active duty ended on 27 or 28 September 1997, depending on whether one day of travel time is included. Since the evidence consistently established that, as charged, the claim was made and presented, and the receipt submitted, on **29 September** 1997, the appellant argues that he was not on active duty on the date of the alleged offenses. He concludes that the alleged false claim was submitted by an individual who, at the time, was not subject to the UCMJ.

The Government responds that an averment of jurisdiction was made by the prosecution, without objection, and that the Government therefore had no obligation to affirmatively prove jurisdiction. It also asserts that various medical documents show that the appellant, in fact, was extended on active duty on 28 September 1997 for medical observation and treatment, and that this extension of active duty continued well past the date of arraignment.[1]

In the trial counsel's opening statement, he referred to the appellant as "a reservist who had been on active duty orders," and said that the evidence would show that the appellant admitted that he "was on active duty." Record at 99–100. In the opening statement of the trial defense counsel (TDC), we note that he conceded that the appellant was on active duty from 23 August until 27 September 1997 and that "he continues on active duty as a reservist here today." Record at 101. Notwithstanding these opening statements, we find that the Government did not present any direct and persuasive evidence of

personal jurisdiction over the appellant on the charged date of 29 September 1997.

It is black-letter law that, for a court-martial to have jurisdiction in a particular case, the offense(s) charged must be subject to court-martial jurisdiction. RULE FOR COURTS-MARTIAL 201(b)(5), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). This is commonly referred to as "subject matter jurisdiction." To the extent permitted by the Constitution, special courts-martial may try any offense under the Code. Arts. 18, 19, UCMJ, 10 U.S.C. §§ 818, 819; R.C.M. 203; *See Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987).

Likewise, it is beyond cavil that a court-martial must also have jurisdiction over the accused service-member. R.C.M. 201(b)(4). This is commonly referred to as "personal" or "in personam" jurisdiction. A court-martial has jurisdiction over all persons subject to the UCMJ. Art. 17(a), UCMJ, 10 U.S.C. § 817(a); R.C.M. 202(a). A reservist is subject to the Code when "lawfully called or ordered into, or to duty in or for training in, the armed forces." Art. 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1).

We view the appellant's initial reference to **subject matter** jurisdiction as a confused allusion to the actual issue of **personal** jurisdiction that he ultimately addresses. Any complaint that this court-martial lacks subject matter jurisdiction is totally without merit.

We now turn our attention to the real issue of personal jurisdiction. The first question that arises is: In the absence of any motion or objection, must the prosecution routinely prove personal jurisdiction over a reservist in its case-in-chief? We have not been cited to any reported case or other authority on point, nor can we find any such authority. Thus, this appears to be an issue of first impression.

■ In a case addressing other personal jurisdiction issues, our superior court said:

---

1. We granted a Motion to Attach various documents from the appellant's medical records that reflect treatment on and after 20 September 1997, as well as an undated memorandum by

Gunnery Sergeant Utz, Administrative Chief for the appellant's command, pertaining to his medical-hold status.

"*since the void enlistment issue was raised in appellant's testimony at trial,* the Government had an affirmative obligation to establish jurisdiction over him." *United States v. Russo,* 1 M.J. 134, 137 (C.M.A.1975)(emphasis added); *see United States v. Stubbs,* 3 M.J. 630, 632 (N.C.M.R.1977). This language suggests that, if the issue is *not* raised at trial, the Government does not have an affirmative obligation to prove personal jurisdiction. In both of these cases, however, the servicemember was a member of the regular branch of his service.[2] We do not believe that there should be any difference in the prosecution of a reservist. We, therefore, hold that the prosecution must only prove personal jurisdiction over an accused reservist when the accused raises the issue at trial. In this case, the prosecution more than satisfied its obligation; in its opening statement, it asserted that the appellant was on active duty and that he had admitted the same during an interrogation. Once the defense conceded the issue in its opening statement, the issue was moot at trial.

 However, this does not end our inquiry, since lack of jurisdiction may be raised for the first time on appeal. R.C.M. 905(e); *see United States v. Reid,* 46 M.J. 236, 240 (1997). We note that, on 20 September 1997, while still on active duty, the appellant sought treatment for a medical condition. The examining physician placed him on light duty and scheduled a follow-up examination a few days later. The appellant was officially placed on medical hold on 28 September 1997. The appellant's light-duty status continued until December 1997, when he was placed on a Limited Duty Board status for six months. Thus, we find that the appellant's active duty that commenced on 25 August 1997 continued, without interruption, through the date of arraignment, and for that matter, the date of sentencing in this court-martial. This active-duty status conferred personal jurisdiction upon the court-martial. The assignment of error has no merit.

### Evidence of Invoking Article 31 Rights

The appellant next contends that he was materially prejudiced when the trial counsel elicited testimony from the NCIS agent that he had refused to sign a written statement and asked to see a lawyer. He also asserts that the military judge's failure to give a curative instruction exacerbated the impact of the error. The Government concedes that an obvious error occurred when the agent so testified, but argues that the appellant suffered no prejudice. We agree.

As stated earlier, the appellant told Special Agent Ball that he was on active duty, that he submitted a false travel claim and that he altered the hotel receipt. These admissions were made after he was advised of his rights but *before* he declined to sign a written statement and asked for a lawyer. There was no objection by the TDC to this line of questioning; the military judge was likewise silent. In his instructions on findings, the military judge failed to give a curative instruction. There was no objection or request for instruction from the TDC.

 When the accused fails to object, at trial, to the erroneous admission of evidence, he must establish, on appeal, that plain error occurred. The general test for plain error is that: (1) an error occurred, (2) it was plain or obvious, and (3) the error materially prejudiced a substantial right. *United States v. Kho,* 54 M.J. 63, 65 (2000). We accept the Government's concession that this was obvious error. To persuade us that this error resulted in prejudice, the appellant must show that the error "had an unfair prejudicial impact on the jury's deliberations." *United States v. Riley,* 47 M.J. 276, 279 (1997), *quoting United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986); *United States v. Ibarra,* 53 M.J. 616, 618–19 (N.M.Ct.Crim. App.2000). In assessing whether such prejudicial impact actually occurred, we must consider all of the circumstances surrounding the admission of this objectionable evidence. *United States v. Sidwell,* 51 M.J. 262, 265 (1999); *Ibarra,* 53 M.J. at 620.

 In our analysis, we are impressed with the following facts: (1) the agent testified that the appellant made the critical ad-

2. Based on our experience, we note that courts-martial convictions are routinely affirmed by military appellate courts when personal jurisdiction was neither raised nor proved at trial.

missions before invoking his rights; (2) the members did not question the witness; (3) the trial counsel did not attempt to exploit this testimony in his arguments on findings; and most importantly, (4) the Government's other evidence of guilt was overwhelming. We find that the appellant was not prejudiced by the erroneous admission of this testimony. Although a curative instruction from the military judge should have been given, the failure to do so was not prejudicial.

## Motion for Continuance to Obtain Civilian Counsel

The appellant complains that the military judge abused his discretion in denying the appellant's request for a continuance to accommodate a civilian attorney's schedule. We disagree.

At the first Article 39(a), UCMJ, session of 2 March 1997, the appellant said that he was trying to hire a Mr. Taylor to represent him and that he did not expect to hire any other attorney. Record at 5–6. The military judge advised the appellant that, if he did retain Mr. Taylor, he must make Mr. Taylor aware of the 16 April trial date as well as earlier deadlines for discovery, witness requests, etc. Record at 6. The appellant said he understood. The military judge reinforced this advice with the warning that the dates were "immovable" and that Mr. Taylor must be prepared to appear, as scheduled. *Id.*

At the next Article 39(a), UCMJ, session of 3 April, the appellant revealed that he had retained a Mr. Minor, then dismissed him. There was no mention of Mr. Taylor. Record at 13. Through his military counsel, the appellant then moved for a continuance until 30 April to allow more time to find a civilian counsel and prepare for trial. *Id.* Despite the Government's objection, the military judge granted the motion and advised the appellant to diligently seek civilian representation. Record at 15. The judge specifically advised the appellant not to expect "a favorable hearing on any further delays in this case." The appellant indicated he understood. Record at 16. Finally, we note that the judge gave the appellant a final warning:

We will hold a 39(a) session on the 28th of April. At that date, I expect all defense counsel to be present in court. Staff Sergeant Oliver, it will be in your own best interest not to hire an attorney if he cannot be available to show up on the 28th of April or, obviously, on the 30th of April and 1 May, the dates of the trial.

Record at 17.

The next Article 39(a), UCMJ, session was held on 30 April. The appellant was absent due to physical inability to appear. In discussing the appellant's absence, the trial counsel declined to press for a determination of voluntary absence and trial *in absentia,* explaining that "none of the witnesses are here at any potential expense," and conceded that the Government would not be prejudiced by a continuance. Record at 24. The trial was postponed until 12 May.

On 12 May, the appellant appeared for trial. However, the TDC made a second motion for a continuance. Record at 29. He explained that the appellant had formed an attorney-client relationship with a Mr. Wood, but that he was not immediately available for trial. Record at 34. After some further discussion and a brief recess, the TDC advised the judge that the appellant apparently was confused about the civilian attorney's last name. In fact, the appellant wished to retain a Mr. Holmes of Virginia Beach, Virginia, and had discussed the case with Mr. Holmes. Record at 37. Mr. Holmes was willing to represent the appellant if the appellant could pay his retainer fee. Assuming that he would be paid in the near future, Mr. Holmes could be prepared to try the case as early as the week of 8 June, or thereafter. Record at 38. The trial counsel then objected vehemently to any further continuance. However, when the military judge asked the trial counsel how the Government would be prejudiced by a continuance, the trial counsel said that the witnesses were local and he was not sure about their availability in the future. Record at 38–41. After hearing testimony about the appellant's pretrial restriction and whether that restricted status impinged upon the appellant's ability to find and retain civilian counsel, the military judge heard further argument and denied the defense motion.

Record at 54–56. In ruling on the motion, the judge entered detailed findings of fact, then concluded that the requested continuance would be an unreasonable delay of the trial.

A military judge should grant a continuance in order to allow an accused a reasonable opportunity to obtain civilian counsel for trial. *United States v. Miller,* 47 M.J. 352, 358 (1997). But, the exercise of the right to civilian counsel "cannot operate to unreasonably delay the progress of the trial." *United States v. Thomas,* 22 M.J. 57, 59 (C.M.A.1986)(citing *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). The test is abuse of discretion, even where failure to grant a continuance would deny an accused the right to a civilian counsel. *Miller,* 47 M.J. at 358. Some relevant factors we may use to determine whether the judge abused his discretion are: surprise, timeliness of the request, length of continuance, previous continuance requests, and use of reasonable diligence by the moving party. *Id.*

The appellant did not, and could not reasonably, claim surprise. The record shows that he and his military counsel were adequately notified well in advance of each scheduled trial date. The motion for a continuance was not timely, having been made the same morning that trial was to start. The length of the continuance was never specified, but the appellant apparently would have accepted a postponement until June 8, when his requested counsel would have been available. This would have resulted in a delay of nearly one month. The appellant had already been granted one previous continuance for nearly one month in order to obtain civilian counsel. Whether the appellant used reasonable diligence to obtain civilian counsel was an issue the judge did not squarely address in his findings and conclusion. Our own review of the record fails to convince us that the appellant was reasonably diligent. During the nearly 75 days that elapsed between arraignment and trial, the appellant had ample opportunities to find and retain counsel. If he encountered difficulty beyond his own ability to resolve, we note that he did not ask his military counsel for assistance. Record at 31, 55. Although the appellant hints in his brief that this was because of some difficulty in his attorney-client relationship with his TDC, such a complaint was never made at trial. Finally, we note that after considering at least three possible civilian attorneys, the appellant didn't even know the correct name of his latest counsel of choice, Mr. Holmes.

We find that the military judge did not abuse his discretion. There was a rational basis to conclude that any further delay would be unreasonable, given all the facts and circumstances. The assignment of error is without merit.

**Ineffective Assistance of Counsel**

The appellant next complains that he was deprived of the effective assistance of counsel because his TDC: (1) "turned on" him in litigating the motion for a continuance, (2) failed to object to an NCIS report on handwriting and fingerprint analysis of the travel claim package, (3) failed to object to the admission of testimony and a document showing that the appellant had invoked his rights, and (4) failed to object to multiplicity and unreasonable multiplication of charges. We disagree.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth the standard for reviewing claims of ineffective assistance of counsel on appeal. The court stated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a

breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. This same standard has been adopted by the Court of Appeals for the Armed Forces in reviewing appellate claims of ineffective assistance of counsel. *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987). Counsel are presumed to be competent in the performance of their representative duties. *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Moreover, we will "strongly presume that counsel has provided adequate assistance." *United States v. Russell,* 48 M.J. 139, 140 (1998)(quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Thus, in order to demonstrate ineffective assistance of counsel, an appellant "must surmount a very high hurdle." *United States v. Smith,* 48 M.J. 136, 137 (1998)(quoting *United States v. Moulton,* 47 M.J. 227, 229 (1997)).

We first address the appellant's complaint that his TDC "turned on" him during the litigation of the second motion for a continuance. During the May 12 colloquy between the military judge and the TDC, the judge remarked that the TDC must have perceived that there was some problem that the appellant was having in contacting civilian counsel. The TDC responded that he did not perceive such a problem. The judge then asked the TDC: "Well, is that because you thought that Staff Sergeant Oliver wasn't looking for a civilian counsel or because he had successfully found one?" The TDC answered, "The former, sir." We note that, a few moments earlier, the TDC had objected to the judge's questions of the TDC about whether the appellant had sought the TDC's assistance in contacting civilian counsel. Nevertheless, the judge persisted in questioning the TDC about the appellant's efforts in contacting civilian counsel. Faced with persistent questioning by the military judge in an area the judge obviously viewed as non-privileged, the TDC dutifully answered in what appears to be a candid and straightforward manner. Record at 32–33.

Was the TDC's performance in this regard deficient? We think not. First, we are not aware of any rule of law or ethics which obliges defense counsel to affirmatively assist his client in finding another defense counsel if the accused does not seek his assistance in doing so. Second, when faced with a trial judge who chose to question him, not the appellant, about the issue of retention of civilian counsel, the TDC answered to the best of his ability. Even if we were to find that the TDC was deficient in his handling of this delicate colloquy with the judge, we find that the appellant was not prejudiced thereby. As we have previously stated, the judge did not abuse his discretion in denying the appellant's second motion for a continuance. Finally, the record is not clear that the appellant would have ultimately hired Mr. Holmes, even if the judge had continued the trial indefinitely.

■ As for the appellant's second assertion that his TDC was deficient in failing to object to the admission of the NCIS report on fingerprints and handwriting in the travel claim package, we decline to "second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Grigoruk,* 52 M.J. 312, 315 (2000); *United States v. Goode,* 54 M.J. 836, 850 (N.M.Ct. Crim.App.2001). After careful consideration of the record, we think it is obvious that the TDC made a tactical decision not to make an objection. As explained in closing argument, the defense theory was that the appellant made the claim for an amount he believed he was entitled to receive, not that somebody else prepared and submitted the claim documents. Thus, there was nothing to be gained by objecting to the exhibits in question, particularly when the appellant confessed that he made and signed them.

■ Concerning the third complaint that the TDC failed to object to evidence that the appellant had invoked his rights during the NCIS interrogation, we find that the TDC was deficient. As we noted previously, this evidence is clearly inadmissible, and we can discern no possible strategic or tactical reason not to object. However, as discussed earlier, given the overwhelming prosecution evidence, we find that the appellant was not prejudiced by the TDC's deficiency.

The last specific assertion of ineffective assistance of counsel concerns the TDC's failure to raise the related issues of multiplicity and unreasonable multiplication of charges. We note that the military judge raised the issues before the court was assembled and invited the TDC to move for some relief as to the form of the charges and specifications. Record at 64. The TDC declined to do so. The trial counsel then conceded that "some of them [referring to the charges and specifications] are pled in the alternative," and proposed reviewing the findings for possible multiplicity before proceeding to the presentence hearing. The military judge indicated a preference for conducting such a review before deliberations on findings, then tabled the issue until later. Record at 65. The next morning, the judge again raised the issue of multiplicity with respect to the original Charge I, violation of Article 80, attempted larceny of the funds claimed as part of the travel claim package, and Charge II, the conviction now before this court. During the discussion, which the TDC declined to join, the trial counsel and the judge referred to potential unreasonable multiplication of charges as well as multiplicity. The discussion of these issues ended when the trial counsel announced that the Government was withdrawing the attempted larceny charge. Record at 67–8. Thus, only the Article 132 charge and its supporting specifications were tried. After the government rested its case on the merits, and the defense stated that it would not present any evidence, the judge asked the TDC if he wanted to raise an issue of multiplicity. The TDC declined to do so. Record at 150. There was no further discussion of multiplicity or unreasonable multiplication of charges. Even if we were to find that the TDC's actions were deficient, we find that his performance did not prejudice the appellant. This assignment of error is without merit.

### Multiplicity and Unreasonable Multiplication of Charges

■ We read the appellant's brief as asserting that the specifications of making a false claim, presenting the same false claim, and using an altered lodging receipt in support of that false claim are multiplicious for findings. Assuming *arguendo* that the specifications state separate offenses under multiplicity analysis, the appellant then argues that they represent an unreasonable multiplication of charges. The Government concedes multiplicity as to making and presenting the false claim. We accept the Government's concession and find Specifications 1 and 2 to be multiplicious for findings. We find that the appellant presented a false claim. Making the false claim was included in the act of presenting the false claim. We will take appropriate corrective action in the decretal paragraph.

■ We next consider whether presenting the false claim was multiplicious for findings with making and using an altered hotel receipt in support of the false claim. While the statutory elements of these two offenses are similar, MANUAL FOR COURTS-MARTIAL, UNITED STATES, (1995 ed.), Part IV, ¶ 58b; *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993), we must also consider the pleadings in determining whether these are separate offenses. *United States v. Weymouth*, 43 M.J. 329 (1995). Specification 2, which describes the presenting a false claim offense, says nothing about making and using a false lodging receipt. Specification 3 describes making and using of a false lodging receipt in support of the false claim. In comparing these two offenses, we find the President's explanation helpful:

> The offense of making a writing or other paper known to contain a false or fraudulent statement for the purpose of obtaining the approval, allowance, or payment of a claim is complete when the writing or paper is made for that purpose, whether or not any use of the paper has been attempted and whether or not the claim has been presented.

MANUAL FOR COURTS-MARTIAL, UNITED STATES, (1995 ed.), Part IV, ¶ 58c(3). We find that the pleadings and elements establish a completely separate offense under Specification 3.

■ Notwithstanding our finding of two separate offenses, we must now consider whether these two convictions represent an unreasonable multiplication of charges. Art. 66, UCMJ; *see United States v. Quiroz*, 55

M.J. 334 (2001); R.C.M. 307(c)(4), Discussion. Under *Quiroz*, we consider five factors in determining whether the multiplication of charges is unreasonable: (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications; (2) Is each charge and specification aimed at distinctly separate criminal acts; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality; (4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure; and (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

■ There was no objection or motion at trial. Each specification is directed at a distinctly separate criminal act. The number of specifications does not exaggerate the appellant's criminality. At this special court-martial there was no increase in punitive exposure. Finally, there is no evidence of prosecutorial overreaching or abuse. The assignment of error lacks merit.

### Conclusion

We dismiss Specification 1. We affirm the findings as to Specifications 2 and 3. We have reassessed the sentence under the principles contained in *United States v. Cook*, 48 M.J. 434, 437–38 (1998), *United States v. Peoples*, 29 M.J. 426, 427–29 (C.M.A.1990), and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986). Having done so, we affirm the sentence as approved on review below.

### Conclusion

The findings and sentence are affirmed.

Senior Judge ANDERSON and Judge VILLEMEZ concur.